IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN E. TARPLEY,                    *

      Plaintiff,                     *

v.                                    *          Civil Action No. GLR-15-2049

FRANK B. BISHOP, JR., et al.,         *

      Defendants.                    *

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants', Warden Frank B. Bishop, Jr. ("Warden Bishop"), Chief of Security William S. Bohrer ("Chief Bohrer"), Officer Sharon L. Lipscomb ("Officer Lipscomb"), Lieutenant Thomas L. Sawyers ("Lieutenant Sawyers"), and Sergeant William L. Thomas ("Sergeant Thomas"), Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 13). The Motion is ripe for disposition. Having reviewed the Motion and supporting documents, the Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2016). For the reasons that follow, the Court will grant Defendants' Motion.

## I.      BACKGROUND

### A.      Tarpley's Allegations[1]

Plaintiff Steven E. Tarpley is a prisoner confined to the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. At all times relevant to the Complaint he was housed in Unit 2 in A or B wing. Although Unit 2 is a general-population housing unit, Tarpley did not have direct access to a mail box and, as such, had to rely on the NBCI corrections staff to properly deposit his outgoing mail for processing.

---

[1] Tarpley's Complaint is verified.

On the morning of Thursday July 3, 2014, at approximately 8:00 a.m., Tarpley left his cell and handed Officer Lipscomb a 9 inch by 12 inch envelope containing responsive pleadings in a civil case Tarpley had filed in the Circuit Court for Allegany County, Maryland.  As an indigent inmate, Tarpley made a request to Case Manager Susan Johnson for additional postage for his legal mail as required by Code of Maryland Administrative Regulations ("COMAR") 12.02.20.03.B.  Johnson, however, referred Tarpley back to the corrections staff.  NBCI policy purportedly requires indigent inmates to attach a money voucher to any mail that requires additional postage which is then presented to the tier officer to be verified and is further approved by the Unit Manager.   An amount equal to the postage required is then debited against the inmate's account to be satisfied when sufficient funds reach the inmate's account.

On July 14, 2014, Tarpley learned that his civil action had been dismissed due to his failure to respond to a pending motion to dismiss (the "Outgoing Mail Incident").  Tarpley asked Officer Lipscomb what she had done with his legal mail, and she responded, "[i]f you can redo it, then I would redo it." (Compl. at 4, ECF No. 1).

Tarpley sent a letter to Assistant Commissioner Randy Watson complaining about criminal interference with his outgoing mail.  In response, Captain Wigfield of the Internal Investigations Division ("IID") interviewed Tarpley.  Tarpley then received a letter from Wayne Webb, Executive Director of the Northern Region.  Webb advised that an investigation revealed that the court did not receive Tarpley's mail until one day after the deadline and there were no "inconsistencies" in the performance of the corrections staffs' duties.  (Defs.' Mot. Dismiss or Mot. Summ. J. Ex. 3, ECF No. 13-5).

Captain Wigfield and Director Webb allegedly ignored COMAR 12.02.20.04.B, which prohibits prison officials from holding outgoing mail for more than twenty-four hours, excluding

weekends and holidays.  Tarpley asserts that under COMAR 12.02.20.04.B, his legal mail should have been processed no later than Monday July 7, 2014.[2]

**B.** **Procedural History**

Tarpley filed his Complaint with this Court on July 1, 2015, raising claims under 42 U.S.C. § 1983 (2012).  Specifically, Tarpley maintains that when Lieutenant Sawyers, Officer Lipscomb, and Sergeant Thomas failed to timely process his outgoing legal mail they violated the First and Fourth Amendments to the United States Constitution and Article 26 of the Maryland Declaration of Rights.  As for Warden Bishop and Chief Bohrer, Tarpley maintains they are liable under the doctrine of supervisory liability.  Tarpley seeks a declaration that Defendants' conduct in not timely processing his outgoing legal mail violated Tarpley's federal constitutional rights, an injunction requiring prison officials to implement a means by which inmates may electronically file pleadings with any court, and compensatory and punitive damages.

Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment on December 28, 2015 (ECF No. 13).  Tarpley submitted an Opposition on March 24, 2016 (ECF No. 19).

## II.    DISCUSSION

**A.** **Standard of Review**

Defendants style their Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled

---

[2] In his verified Complaint, Tarpley also discusses an incident on November 17, 2014 regarding his incoming legal mail.  Tarpley alleges that he signed for two pieces of legal mail, but only received one.  None of Tarpley's causes of action, however, are based on this incident. Tarpley's claims for violation of the First and Fourth Amendments to the United States Constitution and Article 26 of the Maryland Declaration of Rights are based solely on the Outgoing Mail Incident.

in this manner implicates the Court's discretion under Rule 12(d).  See Kensington Vol. Fire

Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom.,

Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012).  Under

Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court,

the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."

The Court "has 'complete discretion to determine whether or not to accept the submission

of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion

and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"  Wells-

Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C

Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).  "This

discretion 'should be exercised with great caution and attention to the parties' procedural

rights.'"  Id. (quoting Federal Practice & Procedure § 1366, at 149).  When exercising this

discretion, the Court should assess whether considering materials beyond the pleadings "'is

likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of

the summary judgment procedure' is necessary."  Id. (quoting Federal Practice & Procedure §

1366, at 165–67).

Other than these factors, the Court is guided by the United States Court of Appeals for

the Fourth Circuit's two-part test for proper conversion of a Rule 12(b)(6) motion to a Rule 56

motion.  Under this test, the "parties [must] be given some indication by the court that it is

treating the 12(b)(6) motion as a motion for summary judgment" and "the parties [must] first 'be

afforded a reasonable opportunity for discovery.'"  Greater Balt. Ctr. for Pregnancy Concerns,

Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175,

177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005).  "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).  Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

Here, Defendants caption their Motion in the alternative for summary judgment and attach matters beyond Tarpley's Complaint for the Court's consideration.  Furthemore, Tarpley has not submitted a Rule 56(d) affidavit expressing a need for discovery, and the court finds that treating Defendants' Motion as one for summary judgment will facilitate the disposition of this action.  Accordingly, the Court will treat Defendants' Motion as one for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).  Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a), (c)(1)(A).   Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  There is a genuine dispute of material fact when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmovant's favor.  Anderson, 477 U.S. at 248.

**B.      Analysis**

Defendants argue Tarpley's claims are barred because he failed to exhaust administrative remedies.  The Court agrees.

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e (2012).   This exhaustion requirement applies to Tarpley notwithstanding that he challenges a single occurrence at NBCI rather than his general conditions of confinement in NBCI.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life[.]"). "Proper exhaustion" is required, "which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Prisoners must "pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process."   Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Haskins v. Hawk, No. ELH-11-2000, 2013 WL 1314194, at

*8 (D.Md. Mar. 29, 2013) (quoting <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007)).  The PLRA explicitly provides, however, that a prisoner must only exhaust the administrative remedies that are "available" to him.  42 U.S.C. § 1997e(a).  Although the PLRA does not define the term "available," the United States Court of Appeals for the Fourth Circuit has "held that 'an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of the administrative remedy.'"  <u>Graham v. Gentry</u>, 413 F.App'x 660, 663 (4th Cir. 2011) (quoting <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008)).  In <u>Ross v. Blake</u>, 136 S.Ct. 1850, 1859–60 (2016), the Supreme Court of the United States outlined three circumstances in which an administrative remedy, although officially on the books, is unavailable: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) "it is so opaque that it becomes, practically speaking, incapable of use;" and (3) "prison administrators thwart inmates from taking advantage of a [it] through machination, misrepresentation, or intimidation."

DPSCS has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction."  Md.Code, Corr. Servs. ("CS") § 10-206(a); <u>see generally</u> CS §§ 10-201 <u>et seq.</u>; COMAR 12.07.01.01(B)(1) (defining ARP).  An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance.  <u>See</u> CS § 10-206(b); <u>see also</u> COMAR 12.07.01.02.D.

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process.  <u>See</u> COMAR 12.07.01.04.  The ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint,

whichever is later.  COMAR 12.07.01.05A.  If the request is denied, a prisoner has thirty calendar days to file an appeal with the Commissioner of Correction.  COMAR 12.07.01.05C.  If the appeal is denied, the prisoner has 30 days to file a grievance with the Inmate Grievance Office ("IGO").  See CS §§10-206, 10-210 (West 2016); COMAR 12 07.01.03; COMAR 12.07.01.05B.

In his verified Complaint, Tarpley maintains that he filed an ARP regarding the Outgoing Mail Incident in accordance with institutional procedures.  He explains that according to NBCI procedure, inmates submit ARPs to their tier officers who relay them for signature to the housing unit manager or the officer in charge.  A yellow carbon copy receipt is then provided to the inmate, showing the signature accepting the ARP.  According to Tarpley, the yellow receipt is almost never returned to the inmate.

Tarpley also states in his verified Complaint that under OPS 185-002.05.J(8), DPSCS requires that the tier officer, or the officer receiving an ARP, sign the ARF to show that it has been received.  Tarpley asserts that this differs from the Warden's policy at NBCI and claims that the Warden's policy allows corrections staff "to thwart all efforts at filing" an ARP, making those administrative remedies unavailable.  (Compl. at 8).

In his Opposition to Defendants' Motion, Tarpley asserts, for the first time, that administrative remedies were not available to him because when he attempted to file an ARP regarding the Outgoing Mail Incident, Sergeant Thomas summoned Tarpley to his office and threatened him.  (Pl.'s Opp'n at 7, ECF No. 19).  Tarpley maintains that Thomas reminded him "how hard he could make life for him" and that "while he may have a good celly now, he could be moved tomorrow."  (Id.).  Alternatively, Tarpley contends that he satisfied the spirit of the exhaustion requirement by writing a letter to the Assistant Commissioner of Correction because

the letter afforded Defendants a fair opportunity to address the matters alleged in his Complaint. (Id. at 8).

Notwithstanding Tarpley's allegations that    Sergeant Thomas discouraged Tarpley from submitting an ARP by threatening him and the Warden's ARP procedure "thwart[s] all efforts at filing" an ARP, (Compl. at 8), Defendants present a copy of an ARP Tarpley submitted on August 15, 2014 that clearly addresses the Outgoing Mail Incident (the "Outgoing Mail ARP"). (See Defs.' Mot. Dismiss or Mor. Summ. J. Ex. 4, ECF No. 13-6).   Defendants also offer a declaration from Russell Neverdon, Jr., IGO Executive Director, who states that IGO has no record that Tarpley submitted a grievance regarding his Outgoing Mail ARP.   (See Neverdon Decl. ¶ e, ECF No. 13-9).   Tarpley presents no evidence to dispute that he did not complete the third step in the ARP process.   Accordingly, the Court concludes Tarpley failed to exhaust administrative remedies, and the Court will grant Defendants' Motion for Summary Judgment.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 13) is GRANTED.   The Court will direct the Clerk to CLOSE this case.   A separate Order follows.

Entered this 2nd day of August, 2016.

/s /

_____
George L. Russell, III
United States District Judge